IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **RONNIE WIGGINS,** | : | CIVIL NO. 3:CV-10-0949 |
| | : | |
| Petitioner | : | |
| | : | (Judge Munley) |
| v. | : | |
| | : | |
| **B.A. BLEDSOE,** | : | |
| | : | |
| Respondent | : | |

:::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::

## MEMORANDUM

Presently before the court is a petition for writ of habeas corpus (Doc. 1) pursuant to 28 U.S.C. § 2241 filed by petitioner, Ronnie Wiggins ("petitioner"), an inmate incarcerated at the United States Penitentiary at Lewisburg, Pennsylvania. He contends that respondent violated his due process rights in the context of a disciplinary hearing. (Doc. 1, at 1.) The petition is ripe for disposition and, for the reasons that follow, will be denied.

I.  **Background**

At 1:00 p.m., on May 12, 2009, petitioner was notified that on May 11, 2009, at 3:00 p.m., an incident report was filed by S.V. Heath, charging that on April 3, 2009, petitioner was in Possession of a Weapon and was party to a Serious Assault. (Doc. 7-2, at 10.) The incident was described as follows: "On May 11, 2009, at 3:00 p.m., this investigator concluded that inmate Ronnie Wiggins, #05766-051, passed via a 'fish line', an 8 inch flat metal weapon from G-202 to cell G-223, at 1:17 p.m., on April 3, 2009. Video surveillance indicated that the weapon was concealed in a magazine as it was being transferred from cell

to cell. At approximately 7:50 p.m., on April 3, 2009, one of the inmates in cell 223 assaulted his cell mate with the weapon provided by inmate Wiggins. This conclusion is based upon inmate interviews and surveillance." (Id.)

On May 19, 2009, the Unit Disciplinary Committee ("UDC") reviewed the report and referred the charges to the Disciplinary Hearing Officer ("DHO") for further review. Wiggins was advised of his rights, chose to call an inmate witness, and exercised his right to have a staff representative present at the hearing. (Doc. 7-2, at 15.) C.O. Crawford agreed to serve as the staff representative. (Id. at 4.)

On August 14, 2009, Wiggins appeared at his disciplinary hearing with his staff representative. "Officer Crawford stated the only specific request Wiggins made of him as a staff representative in this case was to review the video footage which allegedly documents Wiggins passing a weapon to cell G-223. Officer Crawford stated he fulfilled this request of Wiggins. Officer Crawford stated that he discussed the case in advance of the hearing with Wiggins, and Wiggins indicated he is ready to proceed with the hearing. Officer Crawford stated that all of the evidence that he (Officer Crawford) is aware of has been discussed with Wiggins by the DHO. Officer Crawford stated he has no personal knowledge of this incident. Officer Crawford stated he had no further information to present, nor statement to make, regarding this incident." (Doc. 7-2, at 4.)

His inmate statement was summarized as follows:

Inmate Wiggins acknowledged he understood his rights before the DHO and was ready to proceed with the hearing. Inmate Wiggins stated that the only specific request he made of his staff representative, Officer Crawford, in this case, was to

2

> review the video footage which allegedly documents Wiggins passing a weapon to cell G-223. Inmate Wiggins stated that Officer Crawford complied with this request, and discussed the case with him in advance of the hearing. Inmate Wiggins presented a handwritten statement, in his defense, for the DHO to consider. The DHO asked inmate Wiggins whether he understands the definition of confidential informants, and the nature of the confidential information as defined in the inmate discipline policy. The DHO further asked Wiggins if Wiggins understands how confidential information is used in inmate discipline hearings. Wiggins testified that he understands the definition of confidential informants, the nature of confidential information, and how this information is used in inmate discipline hearings.

(Doc. 7-2, at 4-5.)

> Petitioner's verbal testimony was summarized by the DHO as follows:

> Inmate Wiggins testified that Section 11 of the incident report is not accurate. Wiggins testified that he never passed any weapon to cell G-223. Wiggins testified that he acknowledges that the video surveillance footage documents a magazine being "fish lined" to cell G-223 from Wiggins' cell, G-202. Wiggins testified that the magazine he sent to cell G-223 did not contain any weapon. Wiggins testified that he sent commissary items inside of the magazine to the inmates in cell G-223. Wiggins denied authoring or passing any "kites", or written notes, encouraging either of the inmates in cell G-223 to physically assault the other. Wiggins testified that Coker and Loeffler "got in a fight" in cell G-223, and there happened to be a weapon inside of the cell. Wiggins testified that neither inmate was stabbed during the incident, and the only reason he (Wiggins) was charged with Code 104 in this case is because one of the inmates kicked a weapon out of cell G-223, under the door, during the fight. Wiggins testified that he is unsure as to why either of the inmates kicked the weapon out of the cell. Wiggins testified that he was aware that Coker was going to "check Loeffler's heart", however, alleged Coker determined to do this on his own. Wiggins testified that his "organization" (Dirty White Boys) is a "democratic organization" and decisions regarding the organization are made based on consensus. Wiggins alleged, therefore, that he could not have directed either inmate Loeffler or inmate Coker to take physical action against the other. Wiggins testified the Loeffler went out to recreation with him, and that if he (Wiggins"), wanted something done to Loeffler, he would have done it to Loeffler himself with "John Boy" (inmate Shull, #18514-058). Wiggins testified that his only involvement in the incident was sending out a note afterward "talking shit on Coker." Wiggins testified that he did this because he believed that Coker "played the SIS" to "save his own skin"

3

> after the incident with Loeffler, and Wiggins doesn't go for that. The DHO informed Wiggins that the DHO reviewed the notes, authored by Wiggins, which support the finding that Wiggins orchestrated the incident between Loeffler and Coker. The DHO informed Wiggins that these notes bear Wiggins' signature, and that the DHO compared the notes to other documents known to be authored by Wiggins. The DHO informed Wiggins that the DHO is convinced, based on the handwriting comparison, that Wiggins authored these notes. Wiggins testified that anyone can emulate or forge his handwriting. Wiggins testified that some people have the ability to write like other people. Wiggins alleged that if he could view a document hand written by the DHO, he would be able to author a document in handwriting similar enough to the DHO's handwriting to convince others that the DHO authored the document, when it was actually authored by Wiggins. Inmate Wiggins made no complaints of procedural errors during the hearing.

(Doc. 7-2, at 5-6.)

Much of the same information was included in his written statement which petitioner submitted to the DHO for review. Therein, he denied the charges against him and stated that "due to Administration and SIS bias and favoritism" inmate Loeffler was allowed to "play the SIS", and he [Wiggins] was targeted for a fabricated incident report as a result. (Doc. 7-2, at 5.)

Petitioner's requested witness, inmate Loeffler, was unavailable to present in-person testimony because he was transferred to another Federal Bureau of Prison's facility prior to the hearing date. However, he did provide a handwritten statement on May 28, 2009, which is summarized by the DHO as follows: "Loeffler states at no time has Ronnie Wiggins, or any other inmate, given him a weapon to be used against another inmate. Loeffler states that the weapon/knife used to commit the assault on 4-3-2009 was a homemade knife which he made and kept in his possession. Loeffler states that he informed his unit team of this when Loeffler received an incident report charging him with Code 104 for the incident which

4

occurred on 4-3-2009. Loeffler states that he does not know why Ronnie Wiggins was charged with supplying him with the knife he used to commit the assault on 4-3-2009. Loeffler stated that this allegation against Wiggins is 'totally false.'" (Doc. 7-2, at 6.)

Documentary evidence considered included the May 11, 2009 incident report written by S.V. Heath, petitioner's handwritten notes documented in the incident report, and the handwritten statements of petitioner and Loeffler. (Id.)

The DHO also relied on confidential information finding that "[t]he sources of confidential information corroborate one another as well as the physical evidence, including video footage, and handwritten notes authored by Wiggins, in this case." (Id.)

After considering all of the evidence, the DHO found that petitioner committed the prohibited act of Assault (Aiding), Code 101A. (Doc. 7-2, at 7.) However, although the DHO determined that petitioner sent the weapon from his cell, G-202, to cell G-223, which was later used by Loeffler to assault Coker, he concluded that there was insufficient evidence to support the charge Code 104, Possession of a weapon. (Id. at 8.) The Code 104 charge was therefore expunged. (Id.)

## II. Discussion

Petitioner's claim that his due process rights were violated in the context of the disciplinary hearing process, and that this violation resulted in a loss of good conduct time, is properly the subject of this habeas petition because it directly impacts the duration of petitioner's confinement. The Due Process Clause of the Fifth Amendment of the Constitution of the United States provides: "No person shall . . . be deprived of life, liberty,

or property, without due process of law." U.S. Const. amend. V. Federal inmates possess a liberty interest in good conduct time. See Wolff v. McDonnell, 418 U.S. 539, 555-57 (1974); Young v. Kann, 926 F.2d 1396, 1399 (3d Cir. 1991).

The Bureau of Prisons' ("BOP") disciplinary process is fully outlined in Code of Federal Regulations, Title 28, Sections 541.10 through 541.23 (2009). These regulations dictate the manner in which disciplinary action may be taken should a prisoner violate, or attempt to violate, institutional rules. The first step requires filing an incident report and conducting an investigation pursuant to 28 C.F.R. § 541.14.

Following the investigation, the matter is then referred to the UDC for review pursuant to 28 C.F.R. § 541.15. If the UDC finds that a prisoner has committed a prohibited act, it may impose minor sanctions. If the alleged violation is serious and warrants consideration for more than minor sanctions, or involves a prohibited act listed in the Greatest or High severity category, the UDC refers the matter to a DHO for a hearing. In the instant matter, the UDC recommended that further review of the incident be referred to the DHO because it involved offenses of the greatest severity level, which carry a possible sanction of the loss of forty-one days of good conduct time credit, *inter alia*, and "policy requires a DHO hearing." (Doc. 7-2, at 10; see 28 C.F.R. §§ 541.13, Table 3.)

When a DHO hearing may result in the loss of good conduct time credits, due process requires that the prisoner receive due process protections: 1) written notice of the claimed violation at least twenty-four (24) hours in advance of the hearing; 2) an opportunity to call witnesses and present documentary evidence in his or her defense when doing so would not

6

be unduly hazardous to institutional safety or correctional goals; 3) aid in presenting a defense if the inmate is illiterate or the complexity of the case makes it unlikely that the inmate will be able to collect and present the necessary evidence for an adequate comprehension of the case; 4) an impartial tribunal; and 5) a written statement by the factfinder as to evidence relied on and reasons for the disciplinary action. See Wolff v. McDonnell, 418 U.S. 539, 564-572 (1974).

Petitioner states in his reply that "[t]here are essentially two questions presented in the instant habeas action: (1) whether Wiggins had a right, under the due process clause, to the assistance of a staff representative in the disciplinary proceeding in question; and (2) whether Wiggins had a right, under the due process clause, to view written notes purportedly written by him and which were used as evidence against him in the disciplinary proceeding in question." (Doc. 12, at 1-2.)

### A. Staff Representative

Petitioner argues that his due process rights were violated because his staff representative was denied access to documentary evidence. A prisoner does not have a general constitutional right to have a staff representative appear on his behalf in a disciplinary proceeding. See Hudson v. Hedgepeth, 92 F.3d 748, 751 (8th Cir. 1996). "Where an illiterate inmate is involved, however, or whether the complexity of the issue makes it unlikely that the inmate will be able to collect and present the evidence necessary for an adequate comprehension of the case, he should be free to seek the aid of a fellow inmate, or if that is forbidden, to have adequate substitute aid in the form of help from the

staff or from a sufficiently competent inmate designed by the staff." Wolff, 418 U.S. at 570. In such instances, the representative is not obliged to go beyond the specific instructions of the inmate because if he did so, he would then be acting as counsel in a disciplinary proceeding, assistance to which a prisoner is not entitled. (Id.)

Respondent argues that because petitioner's case does not rise to the level of complexity contemplated by Wolff, he was not entitled to the assistance of a staff representative. Conversely, petitioner argues that because the matter involved prison video surveillance, confidential information, a weapon, gang-related assault and a complicated theory of guilty, this "is precisely the type of complicated case contemplated by Wolff." (Doc. 12, at 4.) Since petitioner was provided the assistance of a staff representative, it is unnecessary for the Court to reach the issue of the level of complexity necessary to meet the Wolff threshold.

Notwithstanding the above, his argument that his due process rights were violated because his staff representative was denied access to all of the evidence is without merit. As noted *supra*, a staff representative is obligated to comply with the specific instructions of the inmate. Per the hearing statements of the staff representative and petitioner, petitioner only instructed his staff representative to review the video footage of the incident. Petitioner never instructed the staff representative to review additional evidence. Nor did he request any type of adjournment based on a need to review certain evidence or complain of any procedural irregularities during the hearing. Instead, he indicated that he was prepared to proceed with the hearing and that he understood the definition of confidential informants and

the use of confidential information in the context of a disciplinary hearing. Petitioner is not entitled to relief on this ground.

### B. Right to Evidence

The Wolff protections are "subject to restrictions imposed by the nature of the regime to which [prisoners] have been lawfully committed . . . In sum, there must be mutual accommodation between institutional needs and objectives and the provisions of the Constitution that are of general application." Wolff, 418 U.S. at 556. With regard to the use of confidential information during the disciplinary hearing process, the federal regulations governing the DHO hearing provides that: "When a disciplinary decision is based on confidential informant information, the UDC or DHO shall document, ordinarily in the hearing report, the finding as to the reliability of each confidential informant relied on and the factual basis for that finding. When it appears that this documentation in the report would reveal the confidential informant's identity, the finding as to the reliability of each confidential informant relied on and the factual basis for that finding shall be made part of the hearing record in a separate report, prepared by the UDC chairman or DHO, not available to the inmate." 28 C.F.R. § 541.17(f)(2).

In his report, the DHO advised petitioner that the accusations against him derived, in part, from confidential sources. Specifically, the DHO stated ". . . information was presented to inmate Wiggins as multiple sources of confidential information during the hearing, in order to protect the identity of inmates who provided the information, ensure their safety, and not comprise the security of the institution or Bureau of Prisons. The sources of confidential

9

information presented as evidence hand written notes, authored by inmate Wiggins supporting their verbal statements in this case. The sources of confidential information, and hand written notes authored by Wiggins, indicate that Wiggins orchestrated the incident which occurred between inmates Loeffler and Coker on 4-3-2009, resulting in the assault of Coker by Loeffler." (Doc. 7-2, at 7.) Thus, he was aware that the investigation involved confidential information. He does not have any further right to the details of the confidential investigation relied upon by the hearing officer. See, Wolff, 418 U.S. at 584 (prisoner's right to call witnesses in disciplinary proceeding may be limited by need to protect confidential informant) (Marshall, J., and Brennan, J., concurring in part and dissenting in part); Baxter v. Palmigiano, 425 U.S. 308, 322 n. 5 (1976); Henderson v. Carlson, 812 F.2d 874 (3d Cir. 1987) (hearing officer is not required to disclose evidence bearing on the reliability of confidential informants). Petitioner is not entitled to relief on this claim.[1]

---

[1] To the extent he argues that the hearing examiner was not impartial, he fares no better. In the context of prison disciplinary proceedings, due process requires that the disciplinary tribunal be sufficiently impartial. Meyers v. Aldredge, 492 F.2d 296, 305-07 (3d Cir. 1974); see Wolff, 418 U.S. 539 (disciplinary committee was sufficiently impartial so as not to violate due process). Specifically, in order to insure impartiality, the DHO may not be the reporting officer, investigating officer, or UDC member, or a witness to the incident or play any significant part in having the charge(s) referred to the DHO." 28 C.F.R. § 541.16(b). The requirement of an impartial tribunal "prohibits only those officials who have a direct personal or otherwise substantial involvement, such as major participation in a judgmental or decision-making role, in the circumstances underlying the charge from sitting on the disciplinary committee." Meyers, 492 F.2d at 306. Meyers involved disciplinary action being taken against members of a prisoners' committee involved in the work stoppage. During the work stoppage, an associate warden had considerable contact with the prisoners' committee. Thereafter, the same associate warden served on the disciplinary committee. The Meyers court concluded that the presence of the associate warden on the disciplinary committee denied the prisoners an impartial tribunal. 492 F.2d at 305-07.

## III. Conclusion

Based on the foregoing, the petition for writ of habeas corpus will be denied. An appropriate order follows.

                                          **BY THE COURT:**

                                          **s/James M. Munley**
                                          **JUDGE JAMES M. MUNLEY**
                                          **United States District Court**

Dated: November 3, 2011

---

    In the matter *sub judice*, the DHO did not have a direct personal or otherwise substantial involvement, such as major participation in a judgmental or decision-making role, in the circumstances underlying the charge. Hence, this argument is without merit.

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| RONNIE WIGGINS, | : | CIVIL NO. 3:CV-10-0949 |
| Petitioner | : | |
| | : | (Judge Munley) |
| v. | : | |
| B.A. BLEDSOE, | : | |
| Respondent | : | |

## ORDER

**AND NOW**, to wit, this 3rd day of November 2011, upon consideration of the petition for writ of habeas corpus (Doc. 1), and for the reasons set forth in the accompanying memorandum, it is hereby ORDERED that:

1. The petition for writ of habeas corpus is DENIED.

2. The Clerk of Court is directed to CLOSE this case.

BY THE COURT:

s/James M. Munley
**JUDGE JAMES M. MUNLEY**
**United States District Court**